# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| KAREN HUNT AHMED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.:_____ |
| ) | JURY DEMAND |
| METROPOLITAN GOVERNMENT ) | |
| OF NASHVILLE AND DAVIDSON ) | |
| COUNTY, TENNESSEE, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Comes now the Plaintiff, Karen Hunt Ahmed,[1] and for cause of action against the Defendant, Metropolitan Government of Nashville and Davidson County, Tennessee,[2] would show unto the Court the following:

## PARTIES

1. Plaintiff is a citizen and resident of Nashville, Davidson County, Tennessee. At all times material hereto, Plaintiff was an employee of Defendant.

2. Defendant is a governmental entity of the State of Tennessee. At all times material hereto, public supervisory officials, policymaking officials and staff employed by Defendant engaged in discriminatory acts under color of law which were directed toward Plaintiff and resulted in violations of Plaintiff's civil rights. The Metropolitan Nashville Police Department ("MNPD") is an agency of Defendant. Defendant may be served with process through the Office of the Mayor

---

[1] The Plaintiff, Karen Hunt Ahmed, will hereinafter be referred to as "Plaintiff" or "Ms. Ahmed."
[2] The Defendant, Metropolitan Government of Nashville and Davidson County, will hereinafter be referred to as "Defendant" or "Metro" and includes the Metropolitan Nashville Police Department.

1

for the Metropolitan Government of Nashville and Davidson County, whose address is 1 Public Square, Suite 100, Nashville, Tennessee 37201.

## JURISDICTION AND VENUE

3. Paragraphs 1 and 2 of the Complaint are hereby incorporated by reference as if set forth in full herein pursuant to Fed. R. Civ. P. 10(c).

4. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 as this matter involves a federal question based upon the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq*.

5. Venue is proper in the United States District Court for the Middle District of Tennessee, Nashville Division, pursuant to 28 U.S.C. § 1391 because this is the judicial district in which Defendant is located. Further, the events or omissions described herein occurred in Davidson County, Tennessee.

## PROCEDURAL PREREQUISITES

6. Paragraphs 1 through 5 of the Complaint are hereby incorporated by reference as if set forth in full herein pursuant to Fed. R. Civ. P. 10(c).

7. Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").

8. Plaintiff received a right to sue letter from the EEOC dated December 23, 2019 and fewer than ninety days have elapsed since Plaintiff received the right to sue letter.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL BACKGROUND

10. Paragraphs 1 through 9 of the Complaint are hereby incorporated by reference as if set forth in full herein pursuant to Fed. R. Civ. P. 10(c).

11.     Ms. Ahmed contacted MNPD on or about December 28, 2017 to inquire about employment as a police officer.  At that time, she lived in Oak Park, Illinois where she had been working as a social sciences professor and high school teacher for 10 years.  Her professional background is in academia and international business.  She earned a Bachelor of Arts in Psychology and a Master of Business Administration from Washington University in St. Louis, and she earned a Doctor of Philosophy in Psychology / Human Development from The University of Chicago.  During her time living in Oak Park, Illinois, she was active in community life and performed volunteer work in Chicago, which sparked an interest in law enforcement as a career.  She grew up in Nashville, and a law enforcement career with MNPD afforded her the opportunity to return home and begin a new career where she has a strong network of friends and family.

12.     After the completion of a nine-month application process, Ms. Ahmed was selected to attend the MNPD Training Academy.  At the time she was hired as a police officer trainee on October 16, 2018, she was 51 years old (DOB:  08/16/1967).  Ms. Ahmed loaded up a U-Haul and made the move from Oak Park, Illinois to Nashville, Tennessee on October 11, 2018 to start her new career.

13.     Ms. Ahmed reported for the first day of training at the MNPD Training Academy for a noon starting time on October 16, 2018, at which time she and her 75 classmates received paperwork and instructions, and they performed a physical training fitness test.  The physical training fitness test required the trainees to perform pushups, situps, a 300-yard run and a 1.5-mile run.  She met the graduation standard for pushups and exceeded the graduation standard for situps, the 300-yard run and the 1.5-mile run.  Later that day, Ms. Ahmed and her classmates attended the graduation for the previous class.

14. Ms. Ahmed reported for the second day of training at the MNPD Training Academy on the morning of October 17, 2018, which was scheduled to start at 6:30 a.m. She arrived by 6:15 a.m.

15. Opening speeches lasted until approximately 7:30 a.m. Ms. Ahmed's name was second on the alphabetical list; therefore, she was the second person called to line up in the gym. She was targeted from the beginning. When her name was called to retrieve a red bin to store items, an instructor kicked it out of her hands and started yelling and berating her. As soon as she put her items back into the bin, an instructor would once again kick it out of her hands and make her perform "bear crawls" to retrieve her items strewn about the gym floor. If she ran to pick up her items, an instructor would tell her to stop running. If she stopped running, an instructor would tell her she was too slow. She was continuously singled out and required to perform "bear crawls", "flutter kicks" and push-ups when the other trainees were not being treated in such a severe manner. Training Officers Luke Bridgeman and Laura Wall consistently addressed Ms. Ahmed in an aggressive and overbearing manner. At one point, Ms. Wall yelled at Ms. Ahmed, telling her she did not deserve to be there and that she needed to go home so she could watch *The Price is Right*, a game show that is stereotypically watched by middle-aged women. She was also told that she could go home and watch *Dr. Phil* if she quit, which is also a show stereotypically watched by middle-aged women. Further, she was called "lazy" and "fat," both of which are also stereotypes for middle-aged women. It was clear to Ms. Ahmed that she was being targeted because of her age based on these comments. Ms. Ahmed remained calm and kept a positive attitude throughout these events.

16. Later that morning, an instructor told Ms. Ahmed to report to the office of Captain Keith Stephens, and she was escorted to his office. Captain Stephens asked Ms. Ahmed if she

4

knew why she was there, and she replied, "to serve the community." He informed her she was there in his office because she was exhibiting a bad attitude, citing eye-rolling and smirking as examples. Ms. Ahmed was respectful and informed Captain Stephens that she did not believe she was doing so, and she asked him if he could give her a specific example of what she was doing wrong so she could focus on improvement. He initially refused to give an example, but he then stated she was not following orders. She respectfully asked for a specific instance of refusal to follow an order, and Captain Stephens told her she did not perform "flutter kicks" immediately when told to do so. She explained that she did not initially know how to perform a "flutter kick", so she awaited training officer instruction. Ms. Ahmed then proceeded to ask Captain Stephens what she should do in the future if given an instruction but did not understand. He informed her to ask for instruction. At the conclusion of the meeting with Captain Stephens, he instructed her to return to her class and "do better."

17. Ms. Ahmed rejoined her class outside, at which time she was made class leader and instructed to lead the class in calisthenics and running. Some of Ms. Ahmed's classmates, both male and female, had taken notice of the disparate treatment she was receiving and provided her with encouragement. Ms. Ahmed was in charge of getting her class back outside after a water break. At one point, her water bottle was thrown down a hill by a training officer, and she was made to "bear crawl" down the hill to retrieve the bottle, making her way down the incline on all fours while supporting her entire body weight with her hands and toes. The class shuffled from inside to outside a few times for different activities.

18. At one point during indoor classroom instruction, the class was instructed to do push-ups and a training officer told the class it was Ms. Ahmed's fault that they had to do so. Training Officer Bridgeman instructed Ms. Ahmed to come to the front of the class and yelled at

5

her for doing push-ups incorrectly. Despite the criticism of her performance, Ms. Ahmed was continuously kept in a leadership role during the training sessions. She was alternately berated by Training Office Bridgeman for her supposed inadequate training performance and placed in charge of distributing classroom material and communicating instructions at the behest of Training Officer Victoria Cunningham. Ms. Ahmed found being singled out for criticism and then being placed in positions of responsibility to be confusing, but she remained calm and continued doing what was requested of her.

19. Subsequently, Ms. Ahmed and her classmates were instructed to run back and forth to the gym to retrieve various items, including computer tablets and power cords. During this activity, the class was instructed to retrieve a "dongle" from the gym. No one seemed to know what a "dongle" is, including Ms. Ahmed. A fellow classmate asked Ms. Ahmed to ask what a "dongle" was since she was the class leader. Ms. Ahmed approached Training Officer Bridgeman when he entered the gym and asked for permission to ask a question. He granted permission, and she proceeded to ask what a "dongle" was. At this point, Training Officer Bridgeman advanced on Ms. Ahmed threateningly and intensified his verbal berating, calling her stupid in front of the class. He then asked her to get the class lined up and she complied. Training Officer Bridgeman advanced directly in front of Ms. Ahmed, yelling at her. She remained calm and stepped back. He advanced again, continuing to yell at her. She remained calm and stepped to the side as she continued to line up the class. At that point, Training Officer Bridgeman instructed Ms. Ahmed to "get out of [his] gym." Ms. Ahmed complied and walked out of the gym. As she walked up the stairs outside of the gym, Training Officer Bridgeman yelled to Training Officer Cunningham that Ms. Ahmed hit him and that he wanted her out of his academy. Ms. Ahmed remained calm throughout these events.

20. Ms. Ahmed once again appeared in Captain Stephens' office. Training Officers Bridgeman and Schmitz, and another man whose name is unknown, were also present in Captain Stephens' office. Ms. Ahmed was accused of hitting Training Officer Bridgeman. She respectfully denied the false accusation. They attempted to goad her by stating "everyone knows", "everybody saw you" and "everyone was commenting on your bad attitude, even the videographer." She was once again falsely accused of rolling her eyes, smirking and lying. Ms. Ahmed felt bullied by these large men and perceived that they were attempting to shame her by the distorted characterization of her performance. Her request to review the video was ignored. She was told she would be terminated if she did not resign. She was instructed to return her "issuables" and report to Human Resources. She remained calm during the meeting in Captain Stephens' office.

21. After leaving the meeting in Captain Stephens' office, Ms. Ahmed drove to the Human Resources office and signed a notice of termination under protest.

22. Section 4.50.020 of the MNPD Manual provides as follows:

> It is the policy of the Metropolitan Nashville Police Department that all employees have the right to work in an environment free of all forms of harassment and discrimination. The Metropolitan Nashville Police Department will not tolerate, condone, or allow harassment or discrimination by employees or of employees. The Metropolitan Nashville Police Department considers the harassment and discrimination as a form of serious employee misconduct. Therefore, this department shall take direct and immediate action to prevent such behavior, and to remedy all reported instances of harassment and discrimination. A violation of this order can lead to discipline, up to and including termination. Repeated violations, even if "minor", will result in greater levels of discipline as appropriate.

23. Section 4.50.030 of the MNPD Manual defines discrimination as "[a]ny action that unlawfully or unjustly results in unequal treatment of persons based on race, color, gender, religion, age, disability, sexual orientation, or national origin."

## COUNT I: AGE DISCRIMINATION IN VIOLATION OF THE ADEA

24. Paragraphs 1 through 23 of the Complaint are hereby incorporated by reference as if set forth in full herein pursuant to Fed. R. Civ. P. 10(c).

25. At the time of her date of hire, Plaintiff was 51 years old.

26. Defendant, through its employees and agents, discriminated against Plaintiff based on her age in violation of the ADEA by terminating her employment on October 18, 2018.

27. The comments made to Plaintiff by employees and agents of Defendant, including, but not limited, to Captain Stephens, Training Officer Bridgeman, Training Officer Wall and Training Officer Schmitz, demonstrate discriminatory animus and constitute evidence of age discrimination, as well as the abusive and disparate treatment she received from them. Defendant understands the federal prohibition of age discrimination as evidenced by MNPD's anti-discrimination policy, which, coupled with the comments made to Plaintiff by employees and agents of Defendant and the abusive and disparate treatment she received from them, demonstrate that Defendant's violation was willful and knowing.

28. As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff has suffered economic losses in the form of loss of earnings and loss of future earnings, as well as the loss of opportunity in a retirement plan, health insurance, dental insurance, vision insurance, life insurance and paid time off.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the following relief:

(a) For the Clerk of this Court to issue process and that the Summons and Complaint be served upon Defendant and that Defendant be required to answer within the time period prescribed by the Federal Rules of Civil Procedure;

(b) For a jury to be empaneled to try all issues joined;

(c) For a judgment in her favor on her age discrimination claim against Defendant;

(d) That she be awarded back pay (including interest or an appropriate inflation factor and an enhancement to offset any adverse tax consequences associated with lump sum receipt of back pay), front pay and liquidated damages on her age discrimination claim;

(e) That Defendant be responsible for all costs of this action, including discretionary costs, attorney's fees, pre-judgment interest and post-judgment interest; and

(f) For all other relief, at law or in equity, to which she is entitled.

Respectfully submitted,

/s/ Colin B. Calhoun
Colin B. Calhoun, BPR No. 27131
Calhoun Law PLC
222 Second Avenue North, Suite 210
Nashville, Tennessee 37201
Telephone: (615) 250-8000
Facsimile: (615) 250-8073
E-mail: colin@calhounlawtn.com
*Counsel for Karen Hunt Ahmed*
