# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **KAREN HUNT AHMED,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:20-cv-00242 |
| **METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE** | ) ) ) ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE FRENSLEY |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court Defendant's Motion for Summary Judgment. (Doc. No. 41). In support of the Motion, Defendant filed a memorandum of law and a statement of undisputed material facts (Doc. Nos. 42, 43). Plaintiff responded to the motion and the statement of undisputed material facts (Doc. Nos. 50, 51), and filed a statement of additional material facts (Doc. No. 52). Defendant filed a reply (Doc. No. 53) and a response to Plaintiff's statement of additional material facts (Doc. No. 54)[1]. Also before the Court is Defendant's Motion to Strike Plaintiff's Declaration (Doc. No. 50-1). (Doc. No. 55). Plaintiff responded in opposition to the Motion to Strike. (Doc. No. 57). Defendant filed a reply. (Doc. No. 58).

For the reasons stated below, Defendant's Motion to Strike (Doc. No. 57) will be DENIED and Defendant's Motion for Summary Judgment (Doc. No. 41) will also be DENIED.

---

[1] For ease of reference, Defendant's Concise Statement of Material Facts, together with Plaintiff's response (Doc. No. 51), is cited as "Def. SOF"; and Plaintiff's Concise Statement of Additional Material Facts, together with Defendant's response (Doc. No. 54), is cited as "Pl. SOF."

# I. BACKGROUND

On October 16, 2018, Plaintiff Karen Ahmed entered the Metropolitan Nashville Police Department ("MNPD") Training Academy as a police officer trainee. At 51 years old, Ahmed was the oldest of the more than 65 trainees. (Def. SOF at ¶ 1; Pl. SOF at ¶¶ 1, 2). The training program was to last six months. (Pl. SOF at ¶ 6). Ahmed was terminated less than four hours into the first full day of training. (*Id*. at ¶ 22).

On the first day of the Training Academy, the trainees, including Ahmed, signed a Memorandum of Understanding ("MOU"). (Def. SOF at ¶ 2). Included in the MOU are provisions regarding the honor system and trainee "deportment and discipline." (*Id*. at ¶¶ 3, 4). The MOU states that violation of the honor system "may result in immediate termination." (*Id*. at ¶ 3). A separate paragraph concerning "deportment and discipline" identifies specific examples of "inappropriate behavior," including: "responding in an aggressive fashion towards staff during stressful periods through words, tone of speech, or posturing; the inability to operate as a productive member of a team, especially under stress; [and] unprofessional bearing such as rolling one's eyes or similar behaviors that are disrespectful[.]" (*Id*. at ¶ 4). The MOU warns that an "unacceptable attitude and/or failure to adopt the personality that is necessary to perform the duties of a law enforcement officer will result in termination." (*Id*.).

The sorts of behavior problems identified in the MOU are not uncommon. Captain Keith Stephens, Director of Training, explained that "general behavior" is often a problem for trainees because a lot of them have not experienced a stress academy. (Pl. SOF at ¶ 3). Although problems with "general behavior" can and do lead to termination, generally, training officers address such behavior problems directly with trainees "dozens and dozens" of times a day. (*Id*., ¶¶ 3-4, Stephens Dep., Doc. No. 42-2 at 124-27, 137-39).

2

On the second day of the Training Academy, trainees undergo "stress inoculation." (Pl. SOF at ¶ 7). "Stress inoculation" is a bootcamp-style program where the training instructors yell loudly at the trainees, while at times standing very close to them. (Def. SOF at ¶ 5). The stress inoculation challenged trainees to remain calm in a stressful environment. (Pl. SOF at ¶ 8). Trainees were yelled at and insulted, all while being ordered to complete various tasks and provided inconsistent instructions. (Def. SOF at ¶ 6; Pl. SOF at ¶ 9). For example, Training Officers yelled at trainees calling them "genius" and "moron" and told them to "stop looking at me." (Def. SOF at ¶ 6). Officer Bridgeman stated that training officers expect the trainees to have "some level of struggle" with the stress at the outset of training. (Pl. SOF at ¶ 10; Bridgeman Dep., Doc. No. 54-2 at 98).

During the first morning of stress training, Officers Wall and/or Bridgeman yelled at Ahmed, calling her "lazy" and "fat" and told her that if she quit, she could be at home in time to watch *The Price Is Right* or *Dr. Phil*. (Def. SOF at ¶ 7; Pl. SOF at ¶ 11). Plaintiff recalls that Officers Wall and Bridgeman made these comments, but she does not recall who specifically said what. (Ahmed Dep. at 62-64).[2] Although all of the trainees were yelled at, the other trainees were not subject to comments based on their "personal characteristics" such as being called "lazy" or "fat." (Pl. SOF at ¶ 13).

That morning Training Officers reported to Captain Keith Stephens, Director of Training, that Ahmed was being disrespectful toward the training staff by rolling her eyes, smirking, interrupting the officers, and speaking with a negative tone. (Def. SOF at ¶ 9). Captain Stephens personally heard one of the Training Officers tell Ahmed not to roll her eyes. (*Id*. at ¶ 8). Captain Stephens met with Ahmed in his office with two other Training Officers and informed her of the

---

[2] The complete transcript of Plaintiff's deposition is available at Doc. No. 57-2. All subsequent citations are to "Ahmed Dep. at [page]."

reports of eye rolling and disrespectful behavior and refusal to follow orders. (*Id*. at ¶ 10). As an example of refusal to follow orders, he stated that she had not performed "flutter kicks" as instructed. (Pl. SOF at ¶ 18). When Ahmed explained that she did not know how to do "flutter kicks" and was awaiting instructions, Captain Stephens instructed her to ask a training officer for instructions if she did not know how to perform tasks in the future. (*Id*.). Ultimately, she was reprimanded and then dismissed to return to her training class with a warning to "do better." (*Id*.).

Ahmed rejoined her class outside. She was made class leader and instructed to lead the class in calisthenics and running. (*Id*. at ¶ 19). At one point, a training officer threw her water bottle down a hill and instructed her to "bear crawl" down the hill to retrieve it. (*Id*.). When the class was instructed to do push-ups, the training officer told the class it was Ahmed's fault. (*Id*.). Officer Bridgeman instructed Ahmed to come to the front of the class and yelled at her for doing push-ups incorrectly. (*Id*.).

Captain Stephens observed the class doing a physical training exercise during which the trainees were supposed to be in a plank position. He saw Ahmed with her legs, chest, and torso on the ground and asked her if she was lying on the ground. She responded, "No." (Def. SOF at ¶ 11). Officer Bridgeman, who was also present, accused her of lying to Captain Stephens. (Bridgeman Dep., Doc. No. 50-4 at 108). Plaintiff later conceded that her chest and stomach were "on the ground," but argues that she was not "prone." (Def. SOF at ¶ 11; Ahmed Dep. at 56).

Later that morning, sometime before 11:00 a.m., there was an incident involving Ahmed and Officer Bridgeman. After instructing the class to retrieve a "dongle" from the gym, Officer Bridgeman yelled at Ahmed and called her "stupid" in front of the class for asking what a "dongle" was. (Pl. SOF at ¶ 20). He then ordered her to get the class lined up. (*Id*.). While she was doing so, he continued yelling at her, approached to stand very close, and told her to get out of his face and

4

to get out of his gym. (*Id*.). As she was leaving the gym, Ahmed overhead Officer Bridgeman tell another training officer that Ahmed had hit him. (*Id*.). Ahmed claims that any direct physical contact with Officer Bridgeman was inadvertent. (*Id*.).

Captain Stephens testified that he heard Officer Bridgeman "hollering down the hallway that he had been assaulted." (Stephens Dep., Doc. No. 42-2 at 188). He recounted, "that was the exact words, I've been assaulted by Ms. Ahmed." (*Id*.).

Before speaking with Ahmed about Officer Bridgeman's accusation, Stephens spoke with two other training officers, Officers Wong and Wall, who confirmed that Ahmed made physical contact with Officer Bridgeman. (*Id*. at 201). Jason Wong testified that he saw Ahmed make physical contact with Officer Bridgeman using her arm in what appeared to be an effort to move him or look around him. (Doc. No. 46 at ¶ 10). Laura Wall testified that she saw Ahmed use her hand to try to physically move Officer Bridgeman or "kind of sho[o] him out of the way." (Wall Dep., Doc. No. 42-4 at 47).

Ahmed then appeared in Captain Stephen's office for a second time that morning, this time with Officer Bridgman, Lt. Taylor Schmiz, and Lt. Seline Julia.[3] (Pl. SOF at ¶ 21; Doc. No. 50-2). She was accused of striking Officer Bridgeman, which she denied. (Pl. SOF at ¶ 21). The officers also repeated the earlier accusations of poor performance and bad attitude. (*Id*.). The officers requested her resignation, which she refused. (*Id*.). Ahmed was then terminated on grounds that she was "showing signs of poor behavior and performance." (Def. SOF at ¶ 16; Pl. SOF at ¶ 23; Stephens Decl., Doc. No. 44 at ¶ 6). The decision was approved by then Deputy Chief Damian Higgins and then-Chief Steve Anderson. (Def. SOF at ¶ 16).

---

[3] The precise timeline is somewhat unclear. Captain Stephens also testified that moments after Officer Bridgeman exclaimed that he had been assaulted, Officer Bridgeman and two other officers brought Ahmed to his office. (Stephens, Dep., Doc. No. 42-2 at 188).

5

Plaintiff claims her termination was impermissibly based on her age. She brings a single claim of age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq*.

## II.  MOTION TO STRIKE

Defendant moved to strike Plaintiff's Declaration (Doc. No. 50-1) filed in support of her opposition to Defendant's Motion for Summary Judgment on grounds that it contradicts earlier deposition testimony and attempts to create a sham fact issue with no justification. (Doc. No. 56).

A party may not create a disputed issue of material fact by submitting affidavit or declaration testimony that directly contradicts prior deposition testimony. *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 906 (6th Cir. 2006). This rule is "grounded in the sound proposition that a party should not be able to create a disputed issue of material fact where earlier testimony on that issue by the same party indicates that no such dispute exists." *Id*. at 907. The Court must first determine "whether the affidavit directly contradicts the non-moving party's prior sworn testimony." *Id*. at 908.

Defendant's first objection concerns Paragraph 9 of Plaintiff's Declaration in which she states: "I was targeted from the beginning and treated more harshly than my classmates …" (*Id*. at 2 (citing Ahmed Decl., Doc. No. 50-1 at ¶ 9)). Defendant contends this statement is contradicted by Plaintiff's deposition testimony in which she "made numerous admissions regarding the similarity of the training officers' treatment of her and her classmates." (*Id*. (citing Ahmed Dep. at 37-40, 43-45, 47-48, 50)).

Plaintiff responds that her Declaration does not contradict sworn deposition testimony and is not an attempt to create a "sham fact issue." She notes that although she agreed that the video of the stress training showed similarities in the treatment of her fellow trainees, the video consisted

of less than eight minutes of clips from the first day of training. Therefore, her agreement that the video showed similarities does not contradict her statement that she was treated more harshly than her classmates during the nearly four hours that were not shown on the video. The Court agrees that the Paragraph 9 does not contradict Plaintiff's deposition testimony and should not be stricken on that basis.

Defendant also complains that Plaintiff's Declaration cites to numerous examples of alleged "harsh, disparate treatment" that were not mentioned during her deposition when she was asked who she believes discriminated against her and how. (Doc. No. 56 at 2-3 (citing Ahmed Decl., Doc. No. 50-1, ¶ 9-14; Ahmed Dep. at 60-67)). Plaintiff argues that during her deposition she was never asked questions that would have prompted her to discuss these incidents and that the addition of these facts into the record does not contradict her deposition testimony or create a "sham fact issue." Having carefully reviewed Plaintiff's deposition testimony and Declaration, the Court agrees.

In the alleged contradictory portion of deposition testimony Defendant is asked: "Who do you think discriminated against you?" (Ahmed Dep. at 60:20-21); and "I asked you who specifically discriminated against you." (*Id*. at 61:4-5). Plaintiff responded by stating names of some officers and added, "[T]here were other male voices, but I cannot say specifically who they were." (*Id*. at 61:13-14). Defendant then asked about specific discriminatory acts by the persons named. (*Id*. at 62:4-5 (Wall); 63:25-64:1, 17-18 (Bridgeman); 64:25-65:1, 24-25 (Stephens); 65:5-6, 66:3-6 (Schmitz)). At the conclusion of this line of questioning, Defendant asked, "Is there anyone else you can think of who discriminated against you?" (*Id*. at 66:17-19). Ahmed responded, "Not that I can recall."

Plaintiff's statement of additional training incidents not discussed during her deposition does not directly contradict her deposition testimony. Defendant's line of questioning in the cited portions of deposition testimony would not necessarily elicit testimony regarding a narrative of the events of the morning training session. Moreover, several of the events discussed in Paragraphs 9-14 of the Declaration are the subject of deposition testimony. For example, Paragraph 9 recounts the statements by Officers Bridgeman and Wall, and Paragraph 12 is Plaintiff's recollection of the first meeting with Officer Stephens. (Ahmed Decl., Doc. No. 50-1 at ¶¶ 9, 12; Ahmed Dep. at 62:19; 64:2-16; 69:18-25; 71:6-25-72:1-5). Finally, although Defendant raises some objections to admissibility and relevance, the portions of Plaintiff's Statement of Facts corresponding to her Declaration are not factually disputed. (*See* Pl. SOF, ¶¶ 7, 12, 13, 18, 19 (relying in part on Ahmed Decl., ¶¶ 9-14)). Accordingly, the cited portions of the Declaration cannot create a "sham fact issue."

For these reasons, Defendant's Motion to Strike will be DENIED.[4]

### III.  SUMMARY JUDGMENT

**A. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element

---

[4] Paragraph 10 of the Declaration, which recounts statements allegedly made to Plaintiff by unidentified classmates, will not be considered by the Court because it is inadmissible hearsay. *See Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012) (evidence submitted in opposition to a motion for summary judgment must be admissible).

8

of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

**B. Analysis**

The ADEA prohibits employers discriminating against individuals "because of such individual's age." 29 U.S.C. § 623(a)(1). The Sixth Circuit has explained that "[m]eeting this 'because of' requirement is no simple task." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 323 (6th Cir. 2021). "Plaintiffs must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Id*. To defeat summary judgment, a plaintiff "must show a genuine dispute of material fact that, if resolved in her favor, could persuade a reasonable juror that age was the but-for cause of her termination." *Id*. at 324.

9

Case 3:20-cv-00242   Document 60   Filed 08/05/22   Page 9 of 16 PageID #: 744

Where, as here, a plaintiff offers circumstantial evidence of discrimination, her claim is analyzed under the familiar *McDonnell Douglas* burden shifting framework.[5] *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973)). This framework requires the plaintiff to establish a *prima facie* case of discrimination. *Id*. If she succeeds, the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the termination. *Id*. Once the employer identifies a reason, the burden shifts back to the plaintiff to prove the employer's reason is a mere pretext. *Id*. The ultimate inquiry is whether the evidence is "sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Id*. (quoting *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990)).

To establish a *prima facie* case of discrimination under the ADEA, Ahmed must show that: (1) she was a member of a protected group (older than 40 years old); (2) she subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by someone outside of the protected class or similarly situated non-protected employees were treated more favorably. *See id*. at 326. The burden is "light," "easily met," and "not onerous." *Id*. (citing *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020)).

Defendant does not dispute that Ahmed was a member of a protected group, that she suffered an adverse employment action, or, only as to her *prima facie* case, that she was qualified for the position. (Doc. No. 42 at 10). Defendant argues that she cannot establish the fourth element

---

[5] Without any supporting argument or explanation, Plaintiff submits there is "direct evidence of age discrimination." (Doc. No. 50 at 15). The Court disagrees. Direct evidence, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (*Wexler v. White's Fine Furniture, Inc.* 317 F.3d 564, 570 (6th Cir. 2003)). Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id*. Plaintiff has not pointed to any direct evidence of discrimination. Instead, she argues that she was terminated because of her age based on circumstantial evidence of her harsh treatment during stress training.

– that she was replaced by an individual outside her protected class or similarly situated individuals outside her protected class were treated more favorably.

Plaintiff points to evidence that she was treated more harshly than her fellow trainees, all of whom were younger, and that she was the only trainee derided for her perceived personal characteristics. (Pl. SOF, ¶ 13).

Defendant asserts that Ahmed was treated the same as other, younger trainees, pointing to video of approximately eight minutes of the stress training which shows the training officers yelling "at everybody," and sometimes specifically at the younger trainees. (Doc. No. 42 at 13 (citing Session 86 Video (on file with the Court), and Ahmed Dep. at 37-50)). Defendant also contends that Ahmed cannot show she was treated differently than non-protected similarly situated employees with regard to her termination because Captain Stephens previously fired 31-year-old trainee due to his disrespectful behavior and poor performance after he engaged in similar conduct. (Def. SOF, ¶ 19). The younger trainee smirked and smiled at training staff during their instruction, threw a water bottle on the ground in an aggressive manner, and made physical contact with a training officer by pushing her arm and torso away from his body. (*Id.*).

The Court finds Plaintiff has met her burden to show that she was treated less favorably than similarly situated employees based on her testimony regarding her treatment during training and the undisputed fact that she was the only one about whom the training officers made comments based on her personal characteristics. (*See* Pl. SOF, ¶ 13 ("Defendant does not dispute Ahmed's contention that the training officers did not make comments to other Session 86 trainees 'based on their personal characteristics,' such as being called 'lazy' or 'fat'")). In addition, it is undisputed that problems with "general behavior" were common enough that training officers addressed such problems "dozens and dozens" of times a day. (*See* Pl. SOF, ¶¶ 3-4, Stephens Dep., Doc. No. 50-

2 at 124-27, 137-39). However, Plaintiff was the only trainee terminated during the first four hours of stress training.

Although Defendant challenges Plaintiff's ability to show she was treated less favorably than non-protected employees on grounds that at least once, at some unspecified time in the past, a 31-year-old trainee was terminated for disrespectful behavior and poor performance, this evidence is insufficient to negate Plaintiff's *prima facie* case. Importantly, Defendant has not established that the younger trainee who was terminated during a different session is similarly situated to Plaintiff in all relevant respects. *See Johnson v. Kroger*, 319 F.3d 858, 867 (6th Cir. 2003).

Having determined that Plaintiff has established a *prima facie* case, the burden shifts to Defendant to provide a legitimate, non-discriminatory reason for Ahmed's termination. Defendant states that she was terminated for "disrespectful behavior and poor performance."[6] (Stephens Decl., Doc. No. 44 at ¶ 6).

The burden then shifts back to Plaintiff to show that the "poor performance and disrespectful behavior" is only a pretext to conceal that the true motive for her termination was her age. An employee may show pretext by providing evidence that the employer's reason for termination: (1) had no basis in fact; (2) did not actually motivate the discharge; or (3) was insufficient to motivate the discharge. *Clay v. United Parcel Service*, 501 F.3d 695, 704 (6th Cir.

---

[6] The record reflects slight variations as to the details concerning the reason for Plaintiff's termination. (*See e.g.*, Exit Report, Doc. No. 50-2 at Ex. 18, PageID# 440-41 (citing eye rolling, disrespectful tone of speech, inability to adapt to a structured environment, and disrespectful physical contact with a member of the training staff); Oct. 17, 2018 Memo Re: Trainee Karen Ahmed – Session 86, Doc. No. 50-2 at Ex. 14, PageID# 438-49 (citing eye rolling, smirking, negative tone, negative demeanor, disruptive behavior, failure to meet minimum requirements, difficulty understanding basic instructions, and failure to take responsibility for her behavior and lack of performance)).

12

2007); *Richardson v. Astec, Inc.*, 366 F. Supp. 3d 983, 996 (E.D. Tenn. 2019) (citing *Segel v. Kimberly-Clark Corp.*, 473 F. App'x 416, 420 (6th Cir. 2012)).

Ahmed's argument that Defendant's proffered reason for her termination was pretextual, is not categorized according to the above-mentioned factors. However, the evidence she cites best falls within the latter two factors – that the proffered reason did not actually motivate or warrant the decision to terminate her on the first morning of stress training. Although she has raised some disputes of fact regarding what actually happened during the training – *i.e.*, whether she was laying on the ground or rolled her eyes – she does not assert that the termination decision had "no basis in fact."[7]

Ahmed first points to the remarks made by the training officers calling her "fat" and "lazy" and telling her to go home and watch *The Price Is Right* and *Dr. Phil*, comments she asserts were not made to the other trainees (Pl. SOF at ¶ 13), and are prohibited by MNPD's policies on anti-harassment and non-discrimination (*id*. at ¶ 14, 15, 16). In addition, she argues that, although trainees such as herself exhibit "general behavior" problems during stress training "dozens and dozens of times a day" (Pl. SOF at ¶ 4 (citing Stephens Dep., Doc. 54-3 at 137-39)) and are expected to struggle at some level (*id*. at ¶ 10 (citing Bridgeman Dep., Doc. No. 54-2 at 98)), she was the only one terminated after only a few hours before being given an opportunity to acclimate to the stress training.

Defendant argues Plaintiff cannot rely on age-related comments by the training officers to show bias in connection with her termination because the comments were not made at or near the

---

[7] Defendant argues that the honest belief rule should apply to Captain Stephen's decision. However, because Plaintiff does not contend the termination was without basis in fact, the Court need to address this argument.

13

time Captain Stephens made the termination decision and were not related to his decision. (Doc. No. 42 at 18).

As an initial matter, notwithstanding Stephens' statement that he made the decision to terminate Ahmed's employment, there is evidence from which a finder of fact could conclude that Bridgeman and others were also involved in the decision. The memo Stephens wrote regarding the termination stated that Officer Bridgeman and others "all sat in to discuss her performance." (Oct. 17, 2018 Memo Re: Trainee Karen Ahmed – Session 86, Doc. No. 50-2 at Ex. 14, PageID# 438-49). After discussing their concerns with Ahmed, "we determined she did not meet the minimum standards to continue in our police academy." (*Id*.).

Even if Bridgeman and others were not involved in the termination decision, discriminatory comments by the training officers may be considered relevant circumstantial evidence of discrimination. The Sixth Circuit has held that "discriminatory remarks, even by a nondecionmaker, can serve as probative evidence of pretext." *Bledsoe v. Tennessee Valley Auth. Bd. of Directors*, No. 21-5808, 2022 WL 2965630, at *8 (6th Cir. July 27, 2022) (citing *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009); *see also*, *Ercegovich v. Goodyear Tire & Rubber Co*., 154 F.3d 344, 354-55 (6th Cir. 1998). The *Ercegovich* court explained the relevance of discriminatory remarks by a non-decisionmaker:

> Although discriminatory statements by a nondecisionmaker, standing alone, generally do not support an inference of discrimination, the comments of a nondecisionmaker are not categorically excludable. Circumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add "color" to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.

*Ercegovich*, 154 F.3d at 356.

The relevance of statements by nondecision makers depends on various factors, including "the declarant's position in the corporate hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action, as well as whether the statement buttresses other evidence of pretext." *Id*. (citing *Ryder v. Westinghouse Elec. Corp.,* 128 F.3d 128, 133 (3d Cir.1997), *cert. denied,* 522 U.S. 1116, (1998); and *Wells v. New Cherokee Corp.,* 58 F.3d 233, 237 (6th Cir. 1995)).

Here, the statements were made by her training officers, specifically Officers Bridgeman and Wall, in the context of treatment she contends was harsher than the treatment afforded her fellow trainees, all of whom were younger. These training officers were also the source of the reports of her "poor performance," "bad attitude," and "assault," which ultimately contributed to her termination. Moreover, it was Officer Bridgeman who exclaimed loudly that he had been assaulted by Ahmed, when other evidence indicates that she may have merely been trying to move around him. Given the compressed timeframe (less than 4 hours) the statements and conduct of the training officers are temporally relevant.

Defendant also argues that Plaintiff has not identified any evidence of age-related bias on the part of Captain Stephens. Defendant contends that "[w]hen Ahmed was asked why she believed Captain Stephens specifically discriminated against her, she responded, 'I don't know.'" (*Id*. at 19 (citing Ahmed Dep. at 66)). This is a mischaracterization of her testimony. Ahmed was asked, "Why did Officer Stephens discriminate against you?" (Doc. No. 57-2 at 66:21-22). She asked for clarification, "Why did he or how did he?" (*Id*. at 66:23). The questioner clarified, "Why?" and Ahmed responded, "I don't know." (*Id*. at 66:24-25). This is far from an admission that there is no evidence of discriminatory animus.[8] Moreover, when asked whether she believed Captain

---

[8] During her deposition, Plaintiff was asked why certain individuals discriminated against her. (See Ahmed Dep. at 63 (Officer Wall); 64 (Bridgeman); 66 (Captain Stephens); 67 (Officer Schmitz)). Each

15

Stephens discriminated against her, she explained that his support of Officer Wall and Officer Bridgeman was discriminatory toward her. (Ahmed Dep. at 65).

Defendant also asserts that Plaintiff cannot show that age motivated Captain Stephens' decision to terminate her employment because he did not know her age. (Doc. No. 42 at 19 (citing Stephens Dep., Doc. No. 42-2 at 207-210)). Plaintiff points out that, although Captain Stephens testified that he did not know her age, the Training Academy had notice of her age. (Def. SOF at ¶ 18 (citing Stephens Dep., Doc. No. 50-2 at 130, Ex. 9)). Moreover, even if Captain Stephens did not know her precise age, a jury could infer that he knew she was over 40-years-old and that she was older than the other trainees.

Ultimately, the question before the Court is whether there is sufficient evidence from which a jury could conclude that age was the but-for cause of Plaintiff's termination. Construing the evidence in the light most favorable to the Plaintiff, a jury could infer that she was terminated because of her age. Accordingly, summary judgment is not appropriate.

## IV. CONCLUSION

For the reasons stated, Defendant's Motion to Strike Plaintiff's Declaration (Doc. No. 55) will be **DENIED**. Defendant's Motion for Summary Judgment (Doc. No. 41) will also be **DENIED**.

An appropriate order will enter.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

time Ahmed indicated that she did now know why they discriminated against her. She answered, "I don't know," "I couldn't speculate why," or "I don't know what they were thinking." On the other hand, when she was asked "how" certain officers discriminated against her, she gave examples. (*See e.g.*, Ahmed Dep. at 63 (Officer Wall); 63-64 (Officer Bridgeman)).

16

Case 3:20-cv-00242   Document 60   Filed 08/05/22   Page 16 of 16 PageID #: 751